UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                            ) | Cause No. 1:13-CR-45-HAB |
| ) | |
| ORLANDO PASCHALL               ) | |

**OPINION AND ORDER**

Now before the Court is a letter from Defendant seeking compassionate release (ECF No. 151).[1] The Government has filed its Response (ECF No. 158), and Defendant has replied (ECF No. 172). Defendant has also requested the appointment of counsel and a hearing on his compassionate release request. (ECF No. 173). For the following reasons, each of Defendant's requests will be denied.

**A.     Motion for Appointment of Counsel**

Defendant is not entitled to counsel under the Criminal Justice Act for motions brought under 18 U.S.C. § 3582(c)(1)(A). *United States v. Blake*, 986 F.3d 756, 758 (7th Cir. 2021); *United States v. Guerrero*, 946 F.3d 983, 985 (7th Cir. 2020); *United States v. Foster*, 706 F.3d 887, 888 (7th Cir. 2013). However, a court may, in its discretion, appoint counsel to represent defendants in compassionate release proceedings. *See Blake*, 986 F.3d at 758 ("District judges have discretion to recruit and sometimes appoint counsel for prisoners seeking post-judgment benefits, but prisoners do not have a constitutional or statutory *entitlement* to appointed counsel.") (emphasis in original) (internal citations omitted); *Guerrero*, 946 F.3d at 985 ("[D]istrict courts are not *required* to appoint counsel under these circumstances, but it does not *prohibit* them from doing

---

[1] The Court previously denied this request on the grounds that Defendant had failed to exhaust his administrative remedies through the BOP. (ECF No. 163). However, Defendant has since provided evidence that he did, in fact, exhaust those remedies (ECF No. 164), and the Government has withdrawn its assertion that Defendant failed to exhaust. (ECF No. 166). Accordingly, the Court will now examine Defendant's request on its merits.

so") (emphasis in original); *see also United States v. Tidwell*, 178 F.3d 946, 949 (7th Cir. 1999) ("How a district judge elects to consider a § 3582(c) motion to reduce a sentence is largely a matter of discretion. The judge can appoint counsel for a movant, but need not do so.").

The Court sees no reason to appoint counsel in this case. The Federal Community Defender has already declined to represent Defendant in his quest for compassionate release. (ECF No. 154). Any private attorney appointed by the Court would be forced to work for free. *Foster*, 706 F.3d at 888 ("The Criminal Justice Act does not supply the necessary permission to pay a lawyer from the public fisc."). The Court observes that Defendant's reply is replete with citation to statutory, case law, and academic authorities. The Court sees no reason to confiscate the efforts of a private attorney to assist Defendant in an area where he has shown competence. His motion for appointment of counsel, then, will be denied.

**B.     Motion for Hearing**

Defendant also has no right to a hearing on his motion for compassionate release. *See* Fed. R. Crim. P. 43(b)(4); *Dillon v. United States*, 560 U.S. 827–28 (2010). That said, the Court is certain that it can hold a hearing if one is necessary. *See*, *e.g.*, *United States v. Miller*, 2020 WL 4366088 at *1 (C.D. Ill. July 30, 2020).

As set forth below, the Court has more than enough information to rule on Defendant's compassionate release request, including Defendant's BOP medical file. Moreover, Defendant has had the opportunity to submit whatever evidence he felt appropriate to support his motion. There is no reason for any further proceedings on Defendant's request, and his motion for hearing will be denied.

C.      **Request for Compassionate Release**

1.      *Defendant's Criminal Conduct*

On November 13, 2012, two of Defendant's compatriots robbed a gun store, assaulting both the store owner and a customer. Although Defendant stayed in the getaway vehicle during the robbery, Defendant planned the robbery, sent a third individual into the store to act as a lookout, and had lined up a purchaser for the stolen firearms. Defendant also had a handgun with a thirty-round magazine along with a bag of zip ties on his person when he was apprehended shortly after the robbery.

On May 22, 2013, Defendant was indicted on one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and one count of using a firearm in connection with a crime of violence in violation of 18 U.S.C. § 924(c). He pleaded guilty to the Hobbs Act violation on October 30, 2014, with the Government agreeing to dismiss the § 924(c) charge. Defendant faced a sentence at the low end of the guideline range of 188 months. However, consistent with ECF No. 96, Defendant was sentenced to a below-guidelines sentence of 130 months' imprisonment with two years of supervised release to follow. Defendant is currently held at USP Victorville with an expected release date of June 26, 2023.

2.      *Legal Analysis*

Defendant's motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction …
>
> … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because Defendant, not the Director of the BOP, filed the motion, the Defendant must first demonstrate that he has satisfied the statutory exhaustion requirement. The parties agree that Defendant has done so, allowing the Court to proceed to the merits of the motion.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly before the court. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Accordingly, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn*, 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes.[2] Second, the Court determines whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

---

[2] However, as *Gunn* made clear, the policy statement's requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to be consistent with "applicable policy statements." And, the Sentencing Commission has not yet issued a policy statement "applicable" to the Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180. !

Although Defendant complains about any number of maladies that he claims have been ignored by the BOP, his medical records show only one that has any relevancy to his COVID-19 risk: obesity.[3] *See* CDC, People Who Are at Increased Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html. However, Defendant's BMI alone provides little insight into his physical condition. BMI is a notoriously blunt tool with "clinical limitations," including its inability to differentiate between excess fat, muscle, and bone mass. *See* CDC, Body Mass Index: Considerations for Practitioners, https://www.cdc.gov/obesity/downloads/bmiforpactitioners.pdf. Defendant has identified no current medical issues resulting from his obesity, indicating to the Court that it has little adverse effect on his overall health.

In the absence of any evidence that Defendant's obesity is the result of some other medical condition, the Court concludes that the condition is the result, at least in part, of poor life choices on his part. Defendant does not have a disease; he has the consequences of his decision to overeat and his apparent lack of physical activity. A finding that this kind of condition alone could support compassionate release, creating an avenue for defendants to create grounds on their own, would cheapen the concept of extraordinary and compelling circumstances.

As for his confinement, "the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See Melgarejo*, 2020 WL 2395982, at *3. Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious

---

[3] Defendant further assert that his hypertension is a risk factor should he contract COVID-19. Indeed, hypertension would be a condition that would put him at greater risk should he contract the virus, but that assumes Defendant has hypertension. As the Government notes, there is no such diagnosis in his medical file, so the Court will not consider that condition in ruling on the instant request. That said, the Court's ruling would not change even if Defendant's alleged hypertension was considered.

outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5–6. *See also United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

The Bureau of Prisons continues to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven, https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp; *see also*, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. As a sign of the success of those efforts, USP Victorville currently reports only five active COVID-19 cases among its inmates. https://www.bop.gov/coronavirus/. While Defendant describes incarceration as "qualitatively different" in a post-COVID world, the extremely low number of positive cases at his facility belies this claim. Nor is there likely to be a major spike in COVID-19 cases in the future, as 985 inmates at USP Victorville have been fully vaccinated. *Id*. There simply is no basis, considering Defendant's lack of medical conditions as well as the conditions of his confinement, to find extraordinary and compelling circumstances that would justify compassionate release.

All that said, even if the Court found extraordinary and compelling circumstances, it would still deny Defendant's request. Defendant has shown no signs of having reformed himself during his incarceration. As the Government notes, he has had multiple violations of BOP rules while incarcerated, including violations for weapon and drug possession. His filings with this Court show no remorse for his actions. Instead, he blames his current situation on his childhood and his race. The Court does not challenge his position that children raised in poverty without positive role

models face an increased risk of criminality as adults, nor does it downplay the evidence of disparities in sentencings based on race and affluence. But none of those things change the fact that Defendant masterminded the robbery of a *gun store*, with all parties lucky that more violence did not result. The sheer violence of the offense, and the potential for more, separates Defendant from the white-collar criminals he uses as examples in his reply.

The Court also rejects Defendant's argument that his original sentence is unreasonable now. Contrary to Defendant's assertions, he received a considerable return for his plea and his pre-sentence actions. The dismissal of the § 924(c) count removed at least a mandatory minimum 60 months, and ECF No. 96 shaved an additional 58 months off his sentence. This is nearly ten years of consideration Defendant received from the Government. The Court cannot conclude that his violent crime, his checkered disciplinary history, and his lack of remorse support any further downward departure now. In short, none of the § 3553(a) considerations support Defendant's request for compassionate release.

**D.     Conclusion**

For the foregoing reasons, Defendant's request for compassionate release (ECF No. 151), as well as his Motion for Appointment of Counsel and Motion for Hearing (ECF No. 173) are DENIED.

SO ORDERED on May 6, 2021.

    s/ Holly A. Brady\
JUDGE HOLLY A. BRADY\
UNITED STATES DISTRICT COURT